SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

Vaughn Jones                          )
c/o THE FORD LAW FIRM PLLC            )
506 9th Street, NW                    )
Washington, DC 20004                  )
                                      )
Antonio Pixley                        )
c/o THE FORD LAW FIRM PLLC            )
506 9th Street, NW                    )
Washington, DC 2004                   )
                                      )
        Plaintiffs,                   )
                                      )
        v.                            )       Case No. _____
                                      )       Judge: _____
                                      )       Next Date:
District of Columbia                  )
Public Schools                        )
1200 First Street, NW                 )
Washington, DC 20002                  )
SERVE:                                )
Mayor of District of Columbia         )
John A. Wilson Bldg                   )
1350 Pennsylvania Ave, NW             )
Washington, D.C.2004                  )
                                      )
                                      )
                                      )
        Defendant.                    )

RECEIVED
Civil Clerk's Office

DEC 18 2015

Superior Court
District of Columbia

**15 - 0 0 9 7 8 6**

## **COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT**

COME NOW the Plaintiffs, Vaughn Jones and Antonio Pixley, and through undersigned

counsel, state as follows:

## PARTIES

1. The first named Plaintiff, Vaughn Jones (hereinafter referred to as "Plaintiff 1" or "Coach Jones") was the Calvin Coolidge Senior High School (hereafter "Coolidge") Varsity Boys' Basketball Head Coach located in the Northwest quadrant of Washington, D.C.

2. The second named Plaintiff, Antonio Pixley (hereinafter referred to as "Plaintiff 2" or "Coach Pixley", was the Calvin Coolidge Senior High School Junior Varsity Boys Basketball  Head Coach.

3. D.C. Public Schools (hereafter "DCPS") is the educational arm of the District of Columbia Government and oversees the D.C. Interscholastic Athletic Association (hereafter "DCIAA").

4. DCIAA is the athletic organization overseeing the present interscholastic athletic programs for male and female students within DCPS. DCIAA is charged with determining the eligibility of each student athlete who participates in DCIAA sports.

5. At all times, relevant to this complaint, John Davis (hereafter "Davis") was the Chief of Schools for DCPS.

6. At all times, relevant to this complaint, Stephanie Evans (hereafter "Evans") was the Director of DCIAA.

7. Reginald Ballard (hereafter "Ballard") is the current interim Director, and was the Interim Director at the time Coach Jones received a notice of termination from DCPS. Evans, Ballard and Davis are agents of DCPS and primarily responsible for Coach Jones' termination.

## JURISDICTION

8. Jurisdiction over this action is proper pursuant to D.C. Code § 11-921 (2011).

## FACTS

9. Coach Jones is a former DeMatha Catholic High School All-Met (All-Metropolis Athelete?) and George Washington University basketball star. He is also a teacher at a public charter school and has served students in various capacities for most of his career.

10. In his capacity as head coach, Coach Jones has led Coolidge to three city-wide championships and has coached several of the city's top student-athletes. Under his guidance, many of these at-risk youth have found a path to college—a path otherwise unavailable to them and their families.

11. DCPS terminated Coach Jones from his position as head coach after allegations arose that he knowingly played an ineligible student-athlete, Justin Route. The controversial decision is widely publicized.[1]

12. On October 31, 2015, he received a notice from DCPS that he was dismissed as Head Coach of the Varsity Boys' Basketball team at Coolidge, based on allegations that he knowingly[2] played an ineligible senior, named Justin Route.  **See** **Letters from DCPS dated October 30, 2015,** *attached and incorporated as* **Ex. A.**

13. In the letter, he was charged with dishonesty and "other failures of good behavior." The letter stated, he would no longer be permitted to coach at Coolidge or for DCPS in the future. **Id.**

---

[1] http://www.fox5dc.com/sports/44551528-story;
https://www.washingtonpost.com/sports/highschools/coolidge-boys-basketball-coach-vaughn-jones-dismissed-following-dcps-investigation/2015/11/04/7b41726a-8338-11e5-9afb-0c971f713d0c_story.html?postshare=6081446687675042
[2] The specific allegation is that Coach Jones "knew or should have known" that Justin was ineligible.

14. JV Coach Antonio Pixley was mailed a hard copy of the same letter. However, it was mailed to an address at which he hasn't lived in over 15 years. He later received a copy of the letter via email. formalizing his dismissal. **Id.**

15. Coach Pixley is a graduate of Coolidge High School and attended Elizabeth City State University in North Carolina, where he received a degree in physical education with a concentration in aquatics and fitness.

16. Plaintiffs never played Justin Route during any year when Justin could have been deemed ineligible. Indeed, the last year Justin Route played for Coach Jones was during 2013-2014 school year, when he was a high school junior at Coolidge.

17. As a result of DCPS' eligibility determination, Justin has lost nine scholarship opportunities. **See Affidavit of Jennifer Route,** *attached and incorporated as* **Ex. B, at ¶16.**

18. This complaint is for a temporary and permanent injunction thus preventing DCPS from banning Plaintiffs both now and in the future based on allegations regarding their "involvement" with fraudulently altering Justin Route's eligibility, as there is evidence that DCPS relied upon incorrect and/or fraudulently produced transcripts, showing Justin attended the 9th grade at Paul Public Charter School (hereafter "Paul") when he did not.

19. There is also evidence that Coach Jones served as a witness against Paul on behalf of a former Paul teacher, who filed a lawsuit against the school for employment discrimination. **See Affidavit of Vaughn Jones,** *attached and incorporated as* **Ex. C, at ¶31.**

20. Coach Jones provided a very damning statement against Paul and its CEO Jami Dunham. Three months later, he was under investigation at Coolidge for attempting to play Justin Route as a fifth year senior. Id. at ¶¶ 17,31.

21. It is unclear what other information DCPS relied upon in dismissing Plaintiffs, as no documents were attached to the decision letters.

22. Further, the letters did not mention any specific evidence DCPS relied upon in reaching its decision, other than an alleged conversation with an unnamed high school counselor.

23. There was no mention of date, time or place the alleged conversation took place.

24. The transcripts Ms. Dunham gave to DCPS not only contain grade calculation errors, but they appear to have been fraudulently produced, as they conflict with the transcripts Paul produced to Justin's mother, Jennifer Route, in 2013, after her son matriculated from the 8th grade at Paul and into the 9th grade at Coolidge.   **Ex. B. at ¶¶5, 8.**

25. The letter from DCPS does not  reference Justin's transcripts. **Ex. A.**

26. Justin is currently a high school senior and was a member of the Coolidge High School Varsity Boys' Basketball team. He played basketball at Coolidge for grades 9-11.

27. Since DCIAA has deemed Justin ineligible to play, his family has been forced to transfer him twice to find a school where college recruiters can observe him play. As of the filing of this complaint, Justin has not played basketball this year. There are less than three months left in the season. **Ex. B at ¶¶13,16,18,19.**

28. DCIAA has deemed several Coolidge student-athletes ineligible *after* clearing them to play. **Ex. C. at ¶10.**

29. Coach Jones has challenged several of DCIAA's decisions that affected Coolidge and its student-athletes, including belated eligibility determinations that prevented students from

playing most of the season; game cancellations resulting in a net loss of $10,000-15,000.00 in revenue for Coolidge; blocking eligibility for Coolidge's top student-athletes resulting in a loss of athletic and academic opportunities for star student-athletes.

30. Coach Jones became a target for DCIAA, due to his speaking out against DCIAA's mismanagement of student eligibility and other issues.[3]

31. According to DCIAA rules, a high school student can only play competitive sports for eight semesters in grades nine through twelve (DCMR §A2701.5 (L)(1)).

32. According to DC Municipal Regulation 5A-2701.1, which governs student eligibility in DCIAA athletics, principals and/or administrative heads of schools are responsible for determining and certifying the eligibility of students to participate in interscholastic athletics in accordance with requirements set forth in DCMR Title 5; Chapter 27; Paragraph 2701.1. Section (a) states "Lists of eligible students shall be submitted by **_principals_** to the LEA Director of Athletics two weeks before the first scheduled game, whether league or non-league. Signatures from the Principal, School Athletic Director and Local Education Agency (hereinafter known as "LEA") Athletic Director are required." *Emphasis added.*

33. According to the aforementioned regulations, it is the principal's responsibility—not a coach's responsibility—to submit any documentation to LEAs regarding student eligibility.

34. On or about June 25, 2015, Coach Jones was informed that Justin's eligibility to play basketball was being challenged. He was not informed at that time that he was under

---

[3] Stephanie Evans is currently under investigation for mismanagement of DCIAA funds.
https://www.washingtonpost.com/sports/highschools/dcps-athletic-director-stephanie-evans-on-administrative-leave-city-funds-management-in-question/2015/11/20/f17beaa0-8fd6-11e5-ae1f-af46b7df8483_story.html

investigation. **See Email from Coach Jones dated June 25, 2015,** *attached and incorporated as* **Ex. D.**

35. The specific allegation against Justin is that he completed 9th grade twice—once at Paul then again at Coolidge—and played basketball both years making him ineligible to play his senior year.

36. On June 25, 2015, Coach Jones contacted Coolidge Principal Richard Jackson and Coolidge Athletic Director Roderick Moore, informing them of the allegations and asked that they submit a request for an eligibility determination to the school's LEA. **Ex. D.**

37. It is unknown if either Mr. Jackson or Mr. Moore contacted the LEA or asked another staff member to contact the LEA to make a proper determination about Justin's eligibility.

38. On or about August 5, 2015, Justin's mother, Ms. Route, provided Mr. Jackson and Mr. Moore copies of the transcripts she obtained from Paul in 2013, after he graduated from the 8th grade.  These transcripts show Justin repeated the 8th grade—not the 9th grade, as DCIAA alleges. **See transcripts from Paul dated August 29, 2013,** *attached and incorporated as* **Ex. E;** *see also* **Ex. B. at ¶8.**

39. On August 10, 2015, Mr. Jackson requested a meeting with State Athletic Director Clark Ray to discuss concerns about Justin Route's eligibility due to the transcripts  Ms. Route provided. **See Email dated August 10, 2015,** *attached and incorporated as* **Ex. F.**

40. On August 13, 2015, Mr. Jackson thanked Mr. Ray for the meeting and stated he hoped Justin's athletic and academic career were not affected by "revenge over adult issues." **See Email dated August 13, 2015,** *attached and incorporated as* **Ex. G.**

41. On September 3, 2015, DCPS investigator Ms. Lita Gibson interviewed Justin.

42. Ms. Gibson told Ms. Route she could not be present while her son was interviewed. **Ex. B at ¶9.**

43. Ms. Route requested a transcript of the interview, because she was not permitted to be present while her son was interviewed.

44. According to the transcript Justin clearly indicated that he did not attend the 9th grade at Paul.  **See Interview Transcript dated September 3, 2015, *attached and incorporated as* Ex. H at 1-2.**

45. Justin stated he attended Paul for three years—during his 7th grade year and his 8th grade years twice. **Id.**

46. Ms. Route confirms that Justin repeated the 8th grade, due to challenges the family was experiencing at home. **Ex. B at ¶4.**

47. Justin's transcripts dated August 29, 2013 clearly show he attended the 8th grade  during the 2010-2011 school year, then repeated 8th grade during the 2011-2012 school year. **Ex. E.**

48. Ms. Route obtained these transcripts from Paul in 2013, when she attempted to enroll her son into summer school at Coolidge. **Ex. B at ¶8.**

49. Sometime in August 2015, Roderick Moore and Clark Ray showed Ms. Route transcripts they claim they obtained from Paul. **See Transcripts from Paul dated July 20, 2015, *attached and incorporated as* Ex. I.**

50. These transcripts are dated July 20, 2015 and show Justin attended the 9th grade at Paul from 2011-2012. Both Justin and his mother indicated these transcripts do not accurately reflect Justin's status. **Ex. H at 1-2 and Ex. B at ¶¶3-8.**

51. Interestingly, the transcripts Ms. Dunham produced also contain calculation errors. **See Ex. I.** They show Justin had passing final grades in classes where he clearly failed the majority of the advisory periods.  For example, his final grade for Biology was marked as a "B" but he received an "F" on the final exam and an "F" for two of four advisory periods.  This same irregularity appears on his final grade World History. **Id.**

52. Ballard told Justin's mother that the transcripts she obtained from Paul were "false" and that they were falsified at Coolidge.  When JR's mother asked if Coolidge could fix the error since its staff allegedly falsified the transcripts Ballard did not respond.  **Ex. B.**

53. Both transcripts bear the signature of the same individual and the signature is the exact same. **Compare Exs. E and I.** Thus, it is unclear how Ballard and DCPS came to the determination that the transcripts showing Justin repeated the 8th grade, which completely corroborate his testimony and that of his mother, were falsified by someone from Coolidge.

54. Ballard intentionally lied to Ms. Route about Justin's eligibility. Based on the calculation errors alone, Ballard, Gibson and other decision makers who work for Defendant, knew or should have known the transcripts showing Justin attended the 9th grade at Paul were unreliable in making an eligibility determination about Justin and  dismissal decisions about Coach Jones and Coach Pixley.

55. Upon information and belief, Ballard also knew Justin's 8th grade transcripts were not falsified at Coolidge, when he made this statement to Ms. Route.

56. The decision letter indicates that Plaintiffs told an unnamed school counselor that Justin was a rising junior when Justin was, in fact, a rising senior.  The counselor then took it upon herself to change Justin's status to that of a rising junior.  **Ex. A.**

57. Upon information and belief, this school counselor is Ms. Mignon.

58. Ms. Mignon has a reputation for dishonesty. **See Affidavit of Frank Jones,** *attached and incorporated* **as Ex. J, at ¶¶5, 6.**

59. The decision letter does not indicate that Coach Jones or Coach Pixley told Ms. Mignon to adjust Justin's records. **See Ex. A.**

60. The decision letter does not state any facts that substantiate its conclusion that Justin is ineligible, nor does it state any facts to support the claim that Coach Jones knew or should have known that Justin was ineligible. **Id.**

61. To the extent, the decision relies upon any statement of Ms. Mignon, such a reliance is unreasonable given the other evidence of record and the serious challenges to her credibility in her capacity as a Coolidge employee.

62. DCPS could not have reasonably determined Coach Jones or Coach Pixley knew Justin was ineligible to play or how they should have known he was ineligible to play, especially given the fact that Paul has produced two inconsistent sets of transcripts.

63. Justin's interview transcript reveals a conversation that completely contradicts DCPS' allegations against Coach Jones. **Ex. H.**

64. DCPS has no other information substantiating information that either Coach Jones or Coach Pixley told Ms. Mignon to falsify Justin's records, or that they were directly or indirectly involved with falsifying Justin's records at Paul or Coolidge.

65. In fact, Justin's transcripts are never mentioned in the decision letter from DCPS.

66. Coach Jones has never worked in the records department at Paul or Coolidge and does not have access to any systems that contain student grades and other records.  DCPS does not allege these facts in its decision letter. **Ex. C at ¶¶15-16.**

67. Coach Jones did not alter or direct anyone to alter Justin's transcripts at either Paul or

Coolidge and DCPS does not allege these facts in its letter. **Id.** at **¶12.**

68. Coach Jones is not authorized to determine a student's eligibility to play sports within the

DCIAA and DCPS does not allege these facts in its letter. **Id.** at **¶22-23.**

69. Coach Jones is not responsible for submitting the necessary paperwork to DCIAA or the

LEA pursuant to DC Municipal Regulation Section 2701.1. **Id.**

70. Paul has a history of falsifying student records and grades.

71. It is public knowledge that Paul recently had its test scores invalidated after an

investigation into several testing irregularities, including confirmed allegations that

administrators and proctors erased supposed "stray" marks and filled in answer bubbles

on students' answer sheets.[4]

72. Several witnesses have provided sworn testimony regarding Paul and Jami Dunham's

unethical and illegal practices relating to falsifying student and teacher data in an

unrelated lawsuit filed by a former Paul employee.[5]

73. Coach Jones provided a sworn statement in the aforementioned and unrelated case that he

had personal knowledge of Dunham's unethical practices.  **Id.** at **¶17.**

74. Coach Jones gave DCPS Investigator Ms. Gibson, the names of two Paul employees with

relevant information regarding Paul's practices of falsifying student records, including

grades, test scores and attendance to boost its ranking within the public charter school

system. **Id.** at **¶29-30.**

75. The investigator never interviewed these employees. **Id.**

---

[4] https://www.washingtonpost.com/local/education/six-dc-schools-had-critical-testing-violations-11-others-had-irregularities/2015/09/21/b6de924c-5e3c-11e5-9757-e49273f05f65_story.html
[5] Witherspoon vs. Paul PCS, 2014 CA 003124

76. DCPS does not provide any basis for its findings in the letter. It fails to mention any interviews conducted, documents that were reviewed, or other reasonable basis for its findings.

77. After alleging wrongdoing on the part of Coach Jones, Ballard told Justin's mother that Coach Jones did not have Justin's interests at heart.

78. After DCPS makes a disciplinary decision, it is procedure to notify the State Athletics Office, who shall then convene a panel for further investigation to determine the coach's eligibility in state sanctioned activities. DCMR 5-2702.8 provides:

"The LEA shall provide the disciplinary determinations pursuant to § 2702.7 to the SAO for review by the Panel no later than five (5) calendar days after the date of such action. The Panel shall investigate the matter and issue a written decision whether the school officer or agent participation in SAO activities shall be reduced, suspended, or revoked, in addition to any LEA actions."

79. DCPS never adhered to this regulation. Its findings were not sent to the SAO for review and further investigation into the matter.

80. Despite the fact that Mr. Ray was aware of the investigation and resulting decision, his office did not issue a written decision regarding either of the Plaintiffs' dismissals.

81. To date, Mr. Ray has not convened a panel regarding the eligibility of either Plaintiff's ability to coach in SAO-sanctioned activities.

82. Further, according to DCMR 5-2702.4 each LEA must establish policies addressing probationary actions based on ineligibility determinations, and must provide a copy of those actions to the SAO no later than August 1 of each school year.

83. Upon information and belief, this did not happen before DCPS began investigating Justin and Plaintiffs.

84. Currently, Benny Nesbitt is the interim coach for the varsity boys' basketball team, while the high school janitor, Mr. Wilson, is the coach for the junior varsity boys' basketball team.

85. Coach Jones has a long and tumultuous relationship with DCIAA regarding several student-athletes, some of whom transferred to Coolidge.

86. Upon information and belief, DCIAA targeted Coach Jones due to the fact that several top student-athletes transferred to Coolidge to play basketball, thus making the team one of the best in the city. (Footnotes 5-7 provide examples of a few of these student-athletes). **Ex. B. at ¶15; Ex C. at ¶ 29-30**

87. Many of these student-athletes transferred due to safety reasons[6], financial reasons[7] and other hardships.[8] **Ex. C at ¶8.**

88. Coach Jones' reputation as a father figure, makes Coolidge an attractive option for at-risk families with students in the public school system. **Ex. C.**

89. Coach Jones reported Ms. Evans to the Mayor of the District of Columbia after DCIAA deemed several of his student-athletes ineligible *after* clearing them to play and after it was clear that these were star athletes. **See Email dated Feb 20, 2014 from Coach Jones to Mayor Vincent Gray, *attached and incorporated* as Ex. K.**

---

[6] Luther Anderson was stabbed while attending Dunbar High School and his father applied for a safety transfer to Coolidge to get his son out of danger. William was a star basketball athlete. Dunbar fought the transfer.

[7] William Vedder was a transfer from Potomac, MD. His mother lost her job and was forced to re-locate to D.C. Coach Jones found out William was homeless after noticing that he did not have a place to shower on a regular basis. Coach Jones connected William with the necessary resources to give him stability while he played at Coolidge. William was a top student-athlete. His transfer was challenged.

[8] Derrick Washington's mother died of cancer and he dropped out of school as a result. Derrick's grandmother reached out to Coach Jones to help her save Derrick. Coach Jones assisted her in applying for a hardship waiver due to Derrick's age ineligibility from the year he dropped out. Coach Jones was successful in getting a waiver for Derrick and Derrick was able to graduate from high school and attend college, as a result.

90. As a result of DCPS's unsubstantiated determination, Justin has lost nine scholarship opportunities from various top ranked universities, including but not limited to Temple, Drexel, Boston College, James Madison and Florida State.

91. Coach Jones has a Nike sponsorship that enables him to provide athletic gear to his students. This sponsorship is now in jeopardy, due to DCPS' decision

92. Plaintiffs will never be able to coach again, due to DCPS' decision.

93. DCPS failed to afford Plaintiffs due process throughout the investigation, as they were not able to present any evidence on their behalf or given the opportunity to refute any specific allegations Ms. Mignon or other individuals made about their involvement with changing Justin's classification.

94. Finally, DCPS failed to adhere to municipal regulations, as it did not provide the SAO with a copy of its decision regarding Plaintiffs' dismissals within five days, so a panel could be convened regarding their SAO eligibility.

95. Ms. Route was also never informed of her rights to challenge the determination.

96. To save these opportunities, Justin's family will be forced to separate him from his mother and siblings and send him to private school in Florida, so recruiters can see him play.

## COUNT I- FAILURE TO AFFORD PLAINTIFFS DUE PROCESS

97. Plaintiffs incorporate herein by reference all previous paragraphs as if fully set forth below.

98. Defendant impeded a full and fair investigation into allegations against Plaintiffs; did not advise them of their rights under DCIAA regulations; and did not follow DCIAA regulations when it failed to submit its written decision to the State Athletic Director for a

panel investigation and review into Plaintiffs' future involvement in state-sanctioned activities.

## COUNT II: FRAUD AND DECEIT

99. Plaintiffs incorporate herein by reference all previous paragraphs as if fully set forth below.

100. To establish a claim of fraud, a plaintiff must show there was (1) a false representation; (2) in reference to material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) action is taken in reliance upon the representation. Atraqchi v. GUMC Unified Billing Servs., 788 A.2d 559, 563 (D.C. 2002).

101. Defendant DCPS, through its agents, knowingly relied upon transcripts containing clear calculation errors.

102. Defendant's agents Ballard, Gibson and Evans knew or had reason to know the 9th grade transcripts provided by Paul were falsified records.

103. Defendant's agents, including Ballard, Gibson, Mary Outlaw and John Davis knowingly made a false representation regarding Coach Jones' and Coach Pixley's involvement in Justin's Coolidge records or any other records being adjusted for the purposes of having his eligibility altered.

104. Plaintiffs' involvement, and DCPS knowledge of their involvement or lack thereof, is a material fact.

105. Defendant's agents Ballard, Evans and Gibson created these allegations against Plaintiffs, knowing they were false and with the intent to deceive.

106. As a result, Plaintiffs were terminated from their coaching positions and permanently banned from coaching within DCPS.

107. These affects are far-reaching, as these coaches have been the subject of high-profile news coverage.

108. Defendant's agents Ballard, Evans and Gibson also made false representations to Ms. Route about Coach Jones' motives stating he did not have Justin's best interests at heart, while knowing such statements were false.

109. Defendant's agents Ballard, Evans and Gibson also intentionally sabotaged a fair investigation for Coach Jones.

110. Coach Jones informed Defendant's investigator Ms. Gibson to talk to former Paul employees, Kim Spriggs and Nicole Carryl, to discuss Paul's history of falsifying student records, and explained that Justin's 9th grade transcripts were more than likely altered. Ms. Gibson did not speak with these employees at any time.

111. Defendant's agents Ballard, Evans and Gibson also insinuated Plaintiffs asked or told Ms. Mignon to falsify Justin's Coolidge records, knowing the allegation was false and unsubstantiated.

112. Plaintiffs never asked or told Ms. Mignon to alter Justin's records or the records of any other student-athlete.

113. As a result of Defendant's agents, Ballard, Evans and Gibson knowingly creating false allegations against Plaintiffs; knowingly relying on questionable 9th grade transcripts containing calculation errors so grave as to effect Justin's classification; knowingly impeding a full and fair investigation of the allegations against Plaintiffs to impact the outcome of the investigation.

114. As a result of Defendant's agents' conduct, Plaintiffs were terminated.

## COUNT III: FRAUDULENT MISREPRESENTATION

115. Plaintiffs incorporate herein by reference all previous paragraphs as if fully set forth below.

116. To establish a claim for fraudulent misrepresentation, a plaintiff must show there was (1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation. In re Estate of McKenney, 953 A.2d 336, 338 (D.C. 2008).

117. Defendant, through its agent Ballard, knowingly lied to Ms. Route about Justin's status as an ineligible student-athlete, knowing Justin had two sets of transcripts from Paul and that the set they received stating he was in the 9th grade were clearly unreliable given the fact that two of the final grades listed for core classes were incorrect.

118. Defendant, through its agents Ballard, Evans, Gibson, and Davis, deliberately disregarded the glaring errors on Justin's 9th grade transcript and deliberately disregarded the 8th grade transcripts Ms. Route obtained from Paul showing Justin repeated the 8th grade---not the 9th grade. Instead, it intentionally relied upon questionable transcripts to determine that Justin attended the 9th grade twice, when there was serious reason to doubt the legitimacy of those transcripts and the underlying allegation.

119. Defendant's agent Ballard then knowingly misrepresented to Plaintiffs, Ms. Route and Justin, the 8th grade transcripts she possessed showing Justin repeated the 8th grade were falsified at Coolidge.

120. Defendant's agent Ballard also knowingly misrepresented to Ms. Route the 9th grade transcripts were correct transcripts.

121. Defendant's agent, through Outlaw, also knowingly misrepresented to Plaintiffs in writing that they had a conversation with Ms. Mignon about Justin's classification and in that conversation Plaintiffs intentionally misrepresented Justin's classification to Ms. Mignon, which led her to change Justin's records.

122. As a result of Defendant's conduct, Justin was deemed ineligible, Plaintiffs lost their coaching contracts and ability to coach within DCPS at any time in the future, and Plaintiff's reputations are damaged irrevocably.

## COUNT IV: TORTIOUS INTERFERENCE

123. Plaintiffs incorporate herein by reference all previous paragraphs as if fully set forth below.

124. To have claim for tortious interference, plaintiff must demonstrate: (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages. Havilah Real Prop. Servs. v. VLK, LLC, 108 A.3d 334, 337 (D.C. 2015).

125. Plaintiffs had valid contractual relationships with DCPS as head coach of Coolidge Varsity and Junior Varsity Boys' Basketball teams, respectively. Through that relationship Plaintiff won several championships.

126. Defendant, through its agents Ballard, Evans and Gibson, had knowledge of that relationship.

127. Defendant's agents Ballard Evans and Gibson, intentionally interfered with that relationship by knowingly initiating a baseless investigation against Plaintiffs that resulted

in their removal as head coaches and permanently prevented them from coaching in any DCPS school.

128. This interference has resulted in a loss of Plaintiffs' coaching contracts and future coaching opportunities at both the high schools within DCPS and beyond.

### COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

129. Plaintiffs incorporate herein by reference all previous paragraphs as if fully set forth below.

130. To establish a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress. Crowley v. N. American Telecommunications, 691 A.2d 1169 (D.C. 1997).

131. Defendants' agents intentionally relied upon a falsified and/or inaccurate transcript from Paul to determine that Justin was ineligible.

132. Defendant knew or had reason to know the transcript was false, due to the inaccurate final grades for some of the classes reported on the official transcript.

133. Defendant's agents Ballard, Evans, Gibson and Davis intentionally created false and misleading allegations regarding Plaintiffs' involvement in altering Justin's student records so Coach Jones would be removed.

134. DCIAA's agents Ballard, Evans, Gibson and Davis wanted Coach Jones removed, so Coolidge's success and dominance in DCIAA would end.

135. Concocting a misleading investigation, intentionally disregarding evidence, intentionally relying on inaccurate or highly questionable evidence is extreme and outrageous in lieu of

the impact such a decision has on a student-athlete's career, especially when, as here, the student's eligibility has not been unequivocally proven or disproven.

136. The decision letter to terminate Plaintiffs was issued one week before Coach Jones was scheduled to be inducted into the DeMatha Hall of Fame and a few days before the beginning of pre-season basketball for DCPS schools.

137. The investigation has had an extraordinary impact on Coach Jones, his reputation, his students and his family.

138. Coach Jones is experiencing extreme stress and anxiety in the form of nervousness, sleeplessness, sweating, depressed mood, bouts of hopelessness and despair as he fears he will never be able to do what he loves most – coach at-risk youth within the public school system. **Ex. I.**

139. Coach Pixley, an alumna of Coolidge and a very young coach, is stressed that his career options have been foreclosed. In addition to coaching, he was a behavior tech at Coolidge and was forced to quit after a pay cut. He no longer works within DCPS and fears he will never be able to work again.

WHEREFORE, Plaintiff prays for the following relief:

a. A jury trial.

b. A temporary injunction requiring DCPS to reinstate Plaintiffs to their previous positions pending the outcome of the litigation as there are less than three months left in the season.

c. A permanent injunction requiring DCPS to reinstate Plaintiffs to their previous positions.

d.  A declaratory judgment against DCPS for failure to follow the strictures of due process in investigating allegations against Plaintiffs.

e.  A court order that DCPS re-open its investigation into Justin's eligibility and Plaintiffs' alleged involvement in altering, adjusting, tampering or otherwise influencing a school counselor to alter, adjust or tamper with Justin's official records to affect his eligibility to play basketball.

f.  Punitive damages in the amount of $150,000.00 per plaintiff against Defendants for bad faith.

g.  Compensatory damages for Plaintiffs including back pay.

h.  Damages for pain and suffering in the amount of $100,000.00 per plaintiff.

i.  Reasonable Attorney's Fees and Costs

Respectfully Submitted,

/s/ Yaida O. Ford
Yaida O. Ford, # 497013
The Ford Law Firm, PLLC
506 9th Street, NW
Washington, D.C. 20004
(202) 792-4946
yford@fordlawpros.com

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| Vaughn Jones | ) |
| | ) |
| Antonio Pixley | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | )   Case No. _____ |
| | )   Judge:_____ |
| | )   Next Date: |
| District of Columbia | ) |
| Public Schools | ) |
| | ) |
| District of Columbia | ) |
| Interscholastic Athletic | ) |
| Association | ) |
| | ) |
|     Defendants | ) |

## Exhibit List

A. Letters from DC Public School dated October 30, 2015

B. Affidavit of Jennifer Route

C. Affidavit of Coach Vaughn Jones

D. Email from Coach Vaughn Jones to Roderick Moore re: Justin Route's Eligibility Request dated June 25, 2015

E. Justin Route's Transcript from Paul Public Charter School dated August 29, 2013

F. Email from Richard Jackson to Clark Ray, Roderick Moore, Jennifer Route, and Coach Vaughn Jones re: Proposed Meeting about Justin Route dated August 10, 2015

G. Email from Richard Jackson to Roderick Moore, Vaughn Jones, and Jennifer Route re: Meeting about Justin Route dated August 13, 2015

H. Interview Transcript of Justin Route dated September 3, 2015

I. Justin Route's Transcript from Paul Public Charter School date July 20, 2015

J. Affidavit of Frank Jones III

K. Email from Coach Vaughn Jones to Mayor Vincent Gray re Coolidge v. Anacostia dated February 20, 2014

# Exhibit A



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

<u>Via Overnight Delivery</u>

October 30, 2015

Mr. Vaughn Jones
1706 Galen Street SE
Washington, DC 20020

Re:      Removal from coaching position

Dear Mr. Jones:

Please be advised that the District of Columbia Public Schools (DCPS) has completed Investigation No. 16-002 in which you were charged with Dishonesty and Other Failure of Good behavior in your capacity as the head coach of the Coolidge High School Boys Varsity Basketball Team. The investigation found the allegations to be substantiated.

Specifically, the investigation found that during the 2014-15 school year, you told a counselor at Coolidge High School that one of the basketball players on your team would be an eleventh grader during the coming school year, when you knew or should have known that not to be the case. In fact, and as originally indicated in Coolidge High School records, the student was actually a rising senior. Following your conversation with the counselor, she adjusted the student's record to reflect, incorrectly, that he was a rising eleventh grade student. This adjustment improperly extended the student's eligibility to play basketball for an additional year.

This is the second time in two years you have been investigated for misconduct in relation to student eligibility determinations. As a result of your conduct, DCPS will no longer use your services as coach for Coolidge High School and you will not be permitted to serve as a coach for DCPS in the future.

This decision is effective as of the date of this letter.

Sincerely,

Mary Outlaw
Deputy Chief, Secondary Academic Support

Cc:      John Davis, Chief of Schools
Reginald Ballard, Interim Director of Athletics
David Pinder, Instructional Superintendent
Richard Jackson, Principal
Erin K. Pitts, Deputy Chief, Labor Management & Employee Relations



DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

<u>Via Overnight Delivery</u>

October 30, 2015

Mr. Antonio Pixley
108 Webster St, NE
Washington, DC 20011

Re:     Removal from coaching position

Dear Mr. Pixley:

Please be advised that the District of Columbia Public Schools (DCPS) has completed Investigation No. 16-002 in which you were charged with Dishonesty and Other Failure of Good behavior in your capacity as the coach of the Coolidge High School Boys Junior Varsity Basketball Team.  The investigation found the allegations to be substantiated.

Specifically, the investigation found that during the 2014-15 school year, you told a counselor at Coolidge High School that a Coolidge High School basketball player would be an eleventh grader during the coming school year, when you knew or should have known that not to be the case.  In fact, and as originally indicated in Coolidge High School records, the student was actually a rising senior.  Following your conversation with the counselor, she adjusted the student's record to reflect, incorrectly, that he was a rising eleventh grade student.  This adjustment improperly extended the student's eligibility to play basketball for an additional year.

As a result of your conduct, DCPS will no longer use your services as coach for Coolidge High School and you will not be permitted to serve as a coach for DCPS for two years.

This decision is effective as of the date of this letter.

Sincerely,

Mary Outlaw
Deputy Chief, Secondary Academic Support

Cc:     John Davis, Chief of Schools
        Reginald Ballard, Interim Director of Athletics
        David Pinder, Instructional Superintendent
        Richard Jackson, Principal
        Erin K. Pitts, Deputy Chief, Labor Management & Employee Relations

# Exhibit B

# AFFIDAVIT OF JENNIFER ROUTE

I, Jennifer Route, being duly sworn attest as follows:

1. I am over 18 years of age.
2. My son's name is Justin Route. He is 18 years of age.
3. Justin attended 7th and 8th grade at Paul Public Charter School.
4. Justin repeated the 8th grade in 2011-2012 because of personal challenges I was having at the time that impacted our family.
5. I sent Justin to Coolidge Senior High School for the 9th grade in 2012-2013. I attempted to get him into summer school that year but could not. I obtained his transcripts from Paul's administrative office on or about August 29, 2013.
6. Justin was introduced to Coach Vaughn Jones in the 9th grade while Justin played on the JV team at Coolidge.
7. Around June 2015, Roderick Moore, athletic director from Coolidge, informed me that Justin was not eligible to play basketball.
8. In August 2015, I met with Reginald Ballard and he told me that Justin's transcripts from Paul showed he attended the 9th grade at Paul before attending the 9th grade at Coolidge. I told Mr. Ballard that he was incorrect because my son repeated the 8th grade not the 9th grade. When I showed him the transcripts I personally retrieved from Paul two years ago which backed up my claim, he told me that I needed to disregard those because they were false. I asked him how they could be false and he explained that the transcripts I obtained from Paul were falsified at Coolidge. That made absolutely no sense to me so I asked him whether Coolidge could fix it since it was their error. He did not answer my question.
9. The DCPS investigator, Ms. Gibson, met with my son but refused to allow me to be present during questioning.
10. The investigator would not interview me about my son's school attendance records. She said it was an "administrative matter."
11. I obtained a copy of the interview notes from my son's interview.
12. DCPS has made a mistake regarding my son's eligibility. Mr. Ballard and Mr. Moore have not provided an adequate explanation as to their findings.
13. I have enrolled Justin in Flowers High School located in Prince George's County, however, they are refusing to let him play because of the confusion DCPS has created around Justin's eligibility.
14. I would like OSSE to review this decision and permit a formal hearing to be conducted.

15. DCIAA officials cannot be fair and impartial regarding Coolidge High School and Coach Jones.
16. As a result of DCPS' unfair determination, my son has lost 9 scholarship opportunities to various schools like Hofstra, Temple, Florida State and others.
17. I cry every day about this and feel like my son's future is jeopardized because of adult issues that have nothing to do with him.  This ordeal has had a huge impact on me, my son and my family.  It is overwhelming.
18. I have tried to enroll him in PG County Schools, but due to the falsified transcripts Paul provided, there were questions about my son's classification.  As far as basketball is concerned, he will not be allowed to play in PG County.
19. I am forced to send my son out of state just to save his potential to go to college. He will be separated from me and the rest of his family during a critical time of his life because of DCPS's failure to do the right thing.

I do solemnly state on this 17th day of December 2015, under penalty of perjury under the laws of the United States and the District of Columbia that the foregoing is true and correct to the best of my knowledge, information and belief

Jennifer Route

Sworn to before me this 17 day of December 2015.

Notary Public

My commission expires on 6/30/2020



# Exhibit C

**AFFIDAVIT OF VAUGHN JONES**

I, Vaughn Jones, being duly sworn attest as follows:

1. I am the former Head Coach of the Boys Varsity Basketball team at Calvin Coolidge Senior High School.

2. I am a lifelong District resident.

3. I have coached for more than 17 years and have coached at Coolidge for approximately 9 years.

4. As head coach at Coolidge, I have led the school to three city-wide championships and have mentored several of the city's top players.

5. Throughout my career, I have mentored hundreds of at-risk youth and dozens of them have played for me during my tenure at Coolidge.

6. To several students, I am more than "coach"; I am a father figure to many of these young men and their families who lack the resources needed to thrive in a safe and academically sound environment.

7. I connect kids with tutoring programs and other resources so they can succeed. Sometimes, kids lack food and proper clothing. With a Nike sponsorship, I am able to help get them shoes, socks and other clothing items for the season. For this reason, many parents who are in some type of hardship want their students to play for me. Often times, it is the parents who are in the worst of predicaments, who have the most talented kids.

8. Derrick Washington is a good example. His mother died of cancer in 2004 when Derrick was a sophomore in high school. Derrick hit rock bottom and dropped out of school. Seeing that he was on a path to prison, Derrick's grandmother called me and asked me to save her grandson's life. I was taken aback because the situation was so bad. I took Derrick under my wing and he became an all-star athlete headed to college. However, Derrick was ineligible to play basketball because of his age. Since he dropped out for one year, he was a fifth year senior. During the 2007-2008 school year, I assisted Derrick in applying for a hardship waiver due to his mother's untimely death. DCIAA made it as difficult as possible for him to obtain a waiver but with perseverance we succeeded.

9. I have made several enemies of other coaches and DCIAA officials who are jealous of Coolidge's dominance in high school basketball.

10. DCIAA has failed to properly determine students' eligibility in the beginning of the season time and time again.

11. As a result, schools are forced to forfeit games.  I am unaware of any other successful coaches who have been dismissed after DCIAA fails to determine a student's eligibility.

12. I have never altered any student's records.

13. I do not know Ms. Mignon personally nor have I had any conversations with her about Justin Route or any of my players' eligibility.

14. I have not had any conversations in Ms. Mignon's presence about Justin Route or any of my players, and would have no reason or opportunity to as I do not teach at Coolidge and am not there during school hours. I work full-time at Kingsman Academy.

15. I do not have access to DCPS databases where grades are stored.

16. I do not have access to Paul Public Charter School databases or other facilities where grades are stored.

17.  I agreed to serve as a witness against Paul and its CEO Jami Dunham in a lawsuit and three months later Justin's eligibility was challenged.  Justin attended Paul for 7th and 8th grade.

18. I did not know Justin personally when Justin attended Paul because I worked one-on-one with students who had behavioral problems and Justin was not one of them.

19. To the extent that Justin played basketball at Paul, I did not coach him because I coached at Coolidge at that time.

20. I did not know I was under investigation until August 2015.

21. After I learned Justin's eligibility was being challenged I contacted the proper authorities at Coolidge to take next steps.

22. I was not at all involved in Justin's eligibility determinations one way or another.

23. As a coach, I am not responsible for submitting information regarding a student's eligibility to DCIAA.  That is the principal's job.

24. This entire investigation is a witch hunt because I have fought DCIAA time and again regarding unfair eligibility determinations.

25. I also reported Stephanie Evans, DCIAA Director, to Mayor Vincent Gray for what I believed to be improper actions on the part of DCIAA regarding eligibility determinations that unfairly impacted Coolidge High School in relation to other schools who play ineligible players.

26. DCIAA's actions have effected Justin's life, the life of his team mates and Coolidge's status in the league.  Students have left the team and there is no leadership in place that cares about these kids beyond the basketball court.

27. Justin and several other players may not go to college because of DCIAA's baseless decision.

28. According to DC municipal regulations, DCPS was supposed to advise the Student Athletics Office within 5 days after it made the decision to discipline me. Then the SAO was supposed to convene a panel to investigate the allegations and determine if my participation in SAO activities would also be revoked.  This never happened.

29. Ms. Gibson, the investigator, did not bother speaking to any of the witnesses I named once I learned I was being investigated.

30. These witnesses have critical information about Paul and Jami Dunham. Ms. Dunham was the one who gave Coolidge the 9th grade transcripts I believe were falsified.

31. I testified against Ms. Dunham on behalf of a former Paul employee and three months later was under investigation for allegations related to Justin's eligibility. Ms. Dunham is vindictive and is known to retaliate against employees and former employees. I feel like I am a victim of Ms. Dunham's retaliation because I provided a statement against her.

32. I could coach anywhere, but I chose to coach at DC Public Schools because of the huge need of the young men there.

33. Currently, male students of color make up 43 percent of the overall DCPS student population and those students as a whole are not meeting their potential. Black male students in particular have the lowest attendance and student satisfaction rates.

34. This entire ordeal has had a deep impact on me both emotionally and spiritually. I have been deprived of doing what I love—helping young men within DC public schools

develop their athletic gifts while developing their academic skills so they can get into college.  I find difficulty coping with this situation.


I do solemnly state on this _16th_ day of _December_ 2015, under penalty of perjury un the laws of the United States and the District of Columbia that the foregoing is true and correct to the best of my knowledge, information, and belief.

Vaughn Jones

Sworn to before me on this _16_ day of _December_ 2015.

Notary Public


My commission expires on _6/30/2020_



# Exhibit D



Jennifer Route <jroute1@gmail.com>

## Fwd: DCSAA: Governance - Waiver - Eligibility - Transfer

**Vaughn Jones** <allmet92@msn.com>                           Thu, Jun 25, 2015 at 8:55 AM
To: Roderick Moore <roderick.moore@dc.gov>
Cc: Richard Jackson <richard.jackson4@dc.gov>

Good morning,

Clark Ray stated Justin Route's eligibility is being challenged. Can you submit a requests for eligibility determination to the school's LEA? They must provide an answer so this kid can stop getting harassed and an immediate determination can be made.

Thanks for your attention to this matter.


V. Jones

Sent from my iPhone

Begin forwarded message:

> **From:** "Ray, Clark (OSSE)" <clark.ray@dc.gov>
> **Date:** June 12, 2015 at 8:56:12 AM EDT
> **Cc:** "Williams, Michael (OSSE)" <Michael.Williams12@dc.gov>, "Owens, Kenneth (OSSE)" <kenneth.owens@dc.gov>, "Conley, Sean (OSSE)" <sean.conley@dc.gov>, "Webster, John IV (OSSE-Contractor)" <John.Webster2@dc.gov>, "Rudolph, Marie (OSSE)" <marie.rudolph@dc.gov>
> **Subject: DCSAA: Governance - Waiver - Eligibility - Transfer**

Thank you to everyone who participated in the June 8, 2015 Q & A discussion regarding governance, waivers, transfers and eligibility for DC student-athletes.


The information below is a summary of the discussion and can be used as a guide for you and your staff should any questions arise.


### GOVERNANCE


1.   The rules that govern interscholastic athletics in the District of Columbia are found in the District of Columbia Municipal Regulations (DCMR); Title 5; Chapter 27.  **(Preamble)**

2.   The District of Columbia State Athletic Association (DCSAA) is the entity established within the Office of the State Superintendent of Education that **is responsible for interpreting** DCMR; Title 5; Chapter 27.  **(DCSAA Handbook)**

3.   The Athletic Appeals Panel (AAP), established by OSSE, independent of the DCSAA, is the only entity that may provide a different interpretation of and/or overturn a decision issued by DCSAA.  **(DCSAA Handbook)**

# Exhibit E

# OFFICIAL TRANSCRIPT

**STUDENT NAME: Route, Justin R.    ID#: 9085888**
**CURRENT GRADE: 8  BIRTHDATE: 02/16/1997**

**PAUL PUBLIC CHARTER SCHOOL**
5800 8ᵀᴴ STREET NW
WASHINGTON, DC 20011
(202) 291 - 7499

| | | ADV 1 | ADV 2 | ADV 3 | ADV 4 | EXAM | FINAL & C.U. |
|---|---|---|---|---|---|---|---|
| **11-12 Paul Public Charter School** | | | | | | | |
| M08 | Pre-Algebra 8 | 81 B | 80 B | 81 B | 80 B | 84 B | 81 B |
| E02 | English 8 | 90 A | 87 B | 89 B | 84 B | 83 B | 87 B |
| S08 | Physical Science 8 | 73 C | 85 B | 89 B | 76 C | 91 A | 82 B |
| H15 | American History 8 | 86 B | 78 C | 81 B | 85 B | 84 B | 83 B |
| L10 | Beginning French | 75 C | 85 B | 68 F | 71 C | 80 B | 76 C |
| P12 | Health and Physical Education 8 | | | 99 A | 92 A | | 96 A |
| N20 | Reading Development 8 | 98 A | 90 A | | | | 94 A |
| **10-11 Paul Public Charter School** | | | | | | | |
| H15 | American History 8 | 61 F | 67 F | 71 C | 51 F | 67 F | 63 F |
| A02 | Art Foundation II | 81 B | 72 C | | | | 76 C |
| L10 | Beginning French | | | 62 F | 70 C | 60 F | 64 F |
| E02 | English 8 | 65 F | 54 F | 67 F | 48 F | 38 F | 54 F |
| P12 | Health and Physical Education 8 | | | 87 B | 86 B | 88 B | 87 B |
| M08 | Pre-Algebra 8 | 71 F | 60 C | 72 C | 65 F | 71 C | 68 F |
| N20 | Reading Development 8 | 81 B | 87 B | | | | 84 B |
| S08 | Physical Science 8 | 73 C | 64 F | 70 C | 70 C | 81 B | 71 C |
| **09-10 Paul Public Charter School** | | | | | | | |
| A01 | Art Foundation I | | | 94 A | | | 94 A |
| L10 | Beginning French | 78 C | 82 B | 60 F | 78 C | 80 B | 75 C |
| B17 | Intro to Technology | 80 B | | | | | 80 B |
| E01 | English 7 | 79 C | 84 B | 71 C | 63 F | 65 F | 72 C |
| M13 | Math Review Lab | 80 B | 77 C | 80 B | 82 B | 70 C | 77 C |
| U13 | Music Keyboard Class | | | 92 A | | | 92 A |
| S07 | Life Science 7 | 94 A | 87 B | 90 A | 77 C | 95 A | 88 B |
| SEM | Seminar 7 | 100 P | 100 P | 100 P | 100 P | 100 P | P |
| H11 | Ancient History 7 | 81 B | 88 B | 83 B | 84 B | 90 A | 85 B |

**Paul PCS Seal**

**Cumulative GPA: 2.40**
**Credits Awarded: 0**
**Community Service Hours: 0**

Signature                    08-29-13    Date

ORIGINAL DOCUMENT HAS COLORED BACKGROUND INCLUDING THE SCHOOL LOGO AND IS PRINTED WITH OPTICAL DETERRENT TECHNOLOGY

# Exhibit F

9/4/2015



Jennifer Route <jroute1@gmail.com>

## Coolidge Student Justin Route

**Jackson, Richard (DCPS)** <richard.jackson4@dc.gov>                Mon, Aug 10, 2015 at 1:19 PM
To: "Ray, Clark (OSSE)" <clark.ray@dc.gov>, "Moore, Roderick (DCPS)" <Roderick.Moore@dc.gov>, Jennifer
Route <jroute1@gmail.com>, "allmet92@msn.com" <allmet92@msn.com>

Mr. Ray,


Is there a time in the next several days that we can meet to discuss some irregularities and
concerns about Coolidge student Justin Route and his actual classification?


Ms. Route has inquired and some of her questions can only be answered by you or
your office. I am availabe on Tuesday, Wednesday or Friday between 1pm and 4:30pm.


Thanks in advance for your response.


Richard Jackson, Principal

Coolidge High School

# Exhibit G



Jennifer Route <jroute1@gmail.com>

## Justin Route Meeting

**Jackson, Richard (DCPS)** <richard.jackson4@dc.gov>                    Thu, Aug 13, 2015 at 11:54 PM
To: "Ray, Clark (OSSE)" <clark.ray@dc.gov>, "allmet92@msn.com" <allmet92@msn.com>, Jennifer Route
<jroute1@gmail.com>
Cc: "Moore, Roderick (DCPS)" <Roderick.Moore@dc.gov>, "Dunbar, Calvin (DCPS)" <calvin.dunbar@dc.gov>

Mr. Ray,


Thanks for meeting and listening to our concerns as it relates to Justin. Though it seems we
have differing perspectives on the many serious issues, I just wanted to thank you for
speaking with us. I will be moving forward with my concerns related to multiple transcripts
coming from Paul. Again, I request your support in ensuring that your office is not used to
negatively impact Justin, as a measure of revenge over adult issues. I will be in contact.


Richard Jackson, Principal

Coolidge High School

# Exhibit H



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Chief Operating Officer**
**Office of Compliance**
3535 V Street, NE – Washington, DC – 202-576-6962 – fax 202-576-6593

**Statement**

| Location: Coolidge | Date: 9/3/15 | Time: 1255 | File Number |
|---|---|---|---|
| **Last Name, First, Middle** Route, Justin | | Social Security Number (last four digits only) 90858888 | Date of Birth: 2/16/97 |
| **Organization or Address:** 1311 Kennedy St. NW, Washington, DC 20011 | | | |

**INTERVIEW:**

Q) Did you complete 9th grade at Paul Public Charter?

A) No mam. I did not attend 9th grade.

Q) When you entered Coolidge from Paul what grade did you enter in?

A) I entered as a freshman. 9th grade

Q) How many years did you attend Paul?

A) Three (3) I went my 7th and 8th grade years. I had to repeat

| **EXHIBIT** | **INITIALS OF PERSON MAKING STATEMENT** J.R | **PAGE** 1 **OF** 3 |
|---|---|---|

**OFFICE OF THE CHIEF OPERATING OFFICER**
OFFICE OF COMPLIANCE
STATEMENT

STATEMENT (continued):

8th grade.

Q) What happened for you to have to fail and Repeat 8th grade?

A) I failed some core classes. I don't Remember which ones. My mom signed me up for summer classes but I didn't get in.

Q) Do you know if anyone submitting false documentation (Transcripts) on your behalf?

A) NO

Q) Whats you Relationship if any with Vaughn Jones?

A) He's my head Coach. I Remember him from Paul. He was my Dean. We didn't start talking until 10th grade.

| EXHIBIT NUMBER | INITIAL OF PERSON MAKING STATEMENT  J·R | PAGE  2 OF 3 |
|---|---|---|
| FILE #: | | |

**OFFICE OF THE CHIEF OPERATING OFFICER**
**OFFICE OF COMPLIANCE**
**STATEMENT**

STATEMENT (continued):

Q) How many years did you play basketball at Coolidge?

A) I only played 3

Q) How many years did you play at Paul?

A) I think it was 3 as well

Q) Do you know why anyone would make up documents such as transcripts to get you into Coolidge to play sports?

A) No. Not that I know of.

**AFFIDAVIT**

I, _Justin Roote_ HAVE FULLY READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON Page _1_ and ends on Page _3_. I fully understand the contents of the entire statement made by me. The statement is true. I have initialed all corrections and have initialed the bottom of each sheet containing the statement. I have made this statement freely without hope or benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement.

_Justin Roote_
(Signature of Person Making Statement)

_Melita Oliver_
(Signature of Person Taking Statement)

_9/2/15_
(Witness)

INITIAL OF PERSON MAKING STATEMENT _JR_   Page _3_ of Pages _3_

EXHIBIT #:   FILE #:

# Exhibit I

# OFFICIAL TRANSCRIPT

**PAUL PUBLIC
CHARTER SCHOOL**
5800 8th Street NW
Washington, DC 20011
(202) 291-7499

STUDENT NAME: Route, Justin R.   ID#: 9085888
CURRENT GRADE: 9  BIRTH DATE: 2/16/1997

| | | | ADV 1 | | ADV 2 | | ADV 3 | | ADV 4 | | EXAM | | FINAL & C.U. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **11-12** | **Paul Public Charter School** | | | | | | | | | | | | | |
| M21 | Algebra I  74 | | C | (70) | B | (80) | B | (80) | C | (70) | C | (70) | C | 1 |
| S21 | Biology  71.28 | | A | (91.2) | F | (63.7) | F | (62) | C | (73.5) | F | (56) | B | 1 |
| E03 | English 9 | | F | (65) | F | (54) | F | (67) | F | (48) | F | (38) | F | |
| L11 | French I | | F | (60) | F | (56) | B | (83) | B | (87) | A | (98) | C | 1 |
| P15 | Health & Physical Education 9  89 | | B | (88) | A | (90) | | | | | | | A | .5 |
| E42 | Journalism 9 | | | | | | A | (93) | C | (78) | C | (75) | B | .5 |
| H36 | World History  55 | | F | (61) | F | (28) | C | (71) | F | (51) | F | (67) | B | 1 |
| **10-11** | **Paul Public Charter School** | | | | | | | | | | | | | |
| H15 | American History | | C | (78) | C | (76) | C | (70) | C | (73) | C | (71) | C | |
| A02 | Art II Foundation | | B | (81) | C | (72) | | | | | | | C | |
| L10 | Beginning French | | | | | | F | (62) | C | (70) | F | (60) | C | |
| E02 | English 8 | | A | (90) | B | (87) | B | (89) | B | (84) | B | (83) | B | |
| P12 | Health & Physical Education 8 | | | | | | B | (87) | B | (86) | | | B | |
| M08 | Pre-Algebra 8 | | B | (81) | B | (79) | A | (89) | B | (89) | B | (83) | B | |
| N20 | Reading Development | | B | (81) | B | (87) | | | | | | | B | |
| S08 | Science 8 | | C | (73) | F | (64) | C | (70) | C | (70) | B | (81) | C | |
| **09-10** | **Paul Public Charter School** | | | | | | | | | | | | | |
| A01 | Art I Foundation | | | | | | A | (94) | | | | | A | |
| L10 | Beginning French | | C | (78) | B | (82) | F | (60) | C | (78) | B | (80) | C | |
| B17 | Intro to Technology | | B | (80) | | | | | | | | | B | |
| E01 | English 7 | | C | (79) | B | (84) | C | (71) | F | (63) | F | (65) | C | |
| M13 | Math Review 7 | | B | (80) | C | (77) | B | (80) | B | (82) | | | C | |
| U13 | Music Keyboard Class 7 | | | | | | | | A | (92) | | | A | |
| P11 | Health & Physical Education 7 | | | | A | (90) | | | | | | | A | |
| S07 | Science 7 | | A | (94) | | | A | (90) | C | (77) | A | (95) | B | |
| SEM | Seminar | | P | (100) | P | (100) | P | (100) | P | (100) | | | A | |
| H11 | Social Studies 7 | | B | (81) | B | (88) | B | (83) | B | (84) | A | (90) | B | |

61
28
71
51
67
5 ) 278
         255
    55

90
88
2 ) 178
      89

Cummulative GPA: 2.17
Credits Awarded: 5.00
Community Service Hours: 25

PAUL
PCS
SEAL

SIGNATURE

DATE  7/20/15

# Exhibit J

**AFFIDAVIT OF FRANK JONES III**

I, Frank Jones III, being duly sworn attest as follows:

1. I am the current President/Co-Founder of the Calvin Coolidge High School Alumni Association Inc. (CCAA Inc.) and have served in this and other capacity for over 20 years. The Alumni Association is a registered 501(c)(3) organization.

2. I reside at 422 Butternut St. NW #207 Washington, DC 20012.

3. The Alumni Association developed/coordinated a successful career day program at Coolidge High School from 1990 to 2005.  In 2012 the Coolidge High School administration and the Alumni Association attempted to revitalize the career day program.

4. All communications between the career day speakers and Coolidge were conducted by the Alumni Association pursuant to established protocol.

5. Following the 2013 career day program while working with Ms. Mingion, she made unauthorized private contact to a list of volunteers that belonged to the Alumni Association without permission and for an unapproved purpose that had nothing to do with alumni activities or events. She sent an email to solicit alumni/associates for another purpose and did not provide any notice to myself or the Alumni Association. Various individuals whom received the communications from her contacted me directly, upset about the use of their personal information that was provided directly to the Alumni Association.

6. Ms. Mingion's actions created concerns for the Alumni Associations' relationship with Coolidge. Due to her actions, the Alumni Association has chosen not to continue its work with career day based on the direction Ms. Mingion seems to be going in.  We have expressed our concerns to Coolidge's administration. CCAA Inc. has been somewhat reluctant to work with Ms. Mingion after her disturbing actions which lead us to question her integrity. We believe that it would be in either the school's or the Alumni Association's interest if we were to continue working with Ms. Mingion on alumni events.  Because of the Alumni Association's concerns we no longer participate in any way with the career day program at Coolidge.

7. In my opinion Ms. Minion is the type of person who does not consider discretion in terms of others, particularly when attempting to achieve her own goals.  As such, she is a person I would prefer not to have any involvement with in either a personal or professional capacity if all possible.

8. The Alumni Association began working with Coach Vaughn Jones after he was hired as the Varsity Boys Basketball coach several years ago.

9. I have personally worked with Coach Vaughn Jones in after school programs run by the Alumni Association, and in establishing a Christmas basketball tournament for charity. Coach Jones worked as a counselor for the after school programs for a number of years.

10. Coach Jones also had members of his basketball team participate in the after school program's study hall to get help with their school work.

11. From the moment I met Coach Jones he has worked tirelessly to establish a first-class basketball program at Coolidge. He has assisted families in getting their kids out of dangerous neighborhoods and into positive a setting where they will receive a quality education while utilizing their athletic talents.

I do solemnly state on this 3rd day of December 2015, under penalty of perjury un the laws of the United States and the District of Columbia that the foregoing is true and correct to the best of my knowledge, information, and belief.

Frank Jones, III

Sworn to before me on this 4 day of December 2015.

Notary Public

My commission expires on 08/15/17

ADRIANA R. MESTICHELLI
Notary Public
Montgomery County
Maryland
My Commission Expires Aug. 15, 2017

# Exhibit K

**From:** Vaughn Jones <allmet9192@gmail.com>
**Date:** February 23, 2014 at 8:42:16 PM EST
**To:** "vincentcgray@yahoo.com" <vincentcgray@yahoo.com>
**Subject:** Fwd: Coolidge vs Anacostia 2/20/14

Good evening Mr. Mayor,

It was great speaking with you yesterday. As a great supporter of yours I am deeply disturbed by the numerous events that have happened to not only myself, and Coolidge but other stakeholders, coaches and parents within our DC Community. Below I have sent you the link and a timeline of events that have transpired in the last 2 years in the DCIAA. I ask that you will grant me a small amount of your time so that I can meet with you and share my experiences with you and offer a solution to get DC Sports on a respectable level.

https://www.youtube.com/watch?v=iJWQDNiMIQI&feature=youtube_gdata - Video Tube for YouTube - iPhone/iPad

This double technical was called with 10.9 seconds left in the game. Jamall Gregory #5 (white) walked away from the direction of the Anacostia player #3 (blue) and approximately 15 seconds the official whistles a double technical on #5 white and #13 blue!! Not #3 who pushed #24 to the ground and approached Gregory. We are asking that this technical foul be overturned by Mr. Donnie Gray (Head of Officials). As a result of this call Coolidge was informed today by Ms. Stephanie Evans that Jamall Gregory will not be allowed to play in tomorrow's semifinal game (2/22/14) versus Roosevelt. I am appealing this ruling on behalf of the Varsity Boys Basketball Program. To give you perspective on who I am, I am a native Washingtonian graduating from DeMatha SHS, George Washington University and played professional basketball for several years before working as a roving leader for DC Parks & Recreation, Sped teacher @ Spingarn, Dean of Students @ Coolidge HS, Manager of Wards 1&2 DPR. As my work experience shows I have been entrenched and committed to serving at risk and challenged youth in the District of Columbia for over 17 years. As the Coach of several DCPS schools including Spingarn, Eastern, MM Washington, & for the last 8 years Coolidge I have helped 47 young men receive Full Athletic (Basketball) Scholarships since 2001. Jamall Gregory has 5 colleges coming tomorrow as they have or a few are close to offering him a full athletic scholarship (UNLV, Rutgers, Depaul, Boston College, Florida State University). He also has maintained a 3.0 GPA for the last 2 quarters. At this present time I have been informed by Ms. Gregory (Jamall's mom) that the decision by the DCIAA has went viral on twitter! How is information that was just sent hours ago disseminated so quickly? The reason is because there seems to be **bias** against Coolidge

**Timeline**
March 2012-
Coolidge vs Roosevelt DCIAA Championship - Coolidge wins and advanced to the City Title for the first time since 1988 vs Paul VI. PVI wins. We are informed months later that the DCIAA and WCAC will no longer compete for the Abe Pollin City Title (50 + year tradition).

February 2013 Coolidge vs Roosevelt DCIAA Championship - Coolidge wins but was not able to celebrate the title as we were told by Ms. Evans to "go in the locker room because it's a safety issue", this happened after 3 Roosevelt players went into the stands and started fighting fans in the crowd. I was told by Ms. Evans that we would celebrate our title at the DCSAA 1st rd game days after the title game. We did (celebrate) with maybe 100 fans in attendance compared to the 3,500 in attendance at the DCIAA Championship Game.

March 2013- DCSAA playoff meeting- Ms. Evans discussed the parameters involving the tournament mentioned to Sean Conley that the seeding wasn't fair particularly to a team like Roosevelt because " Coolidge upset them", she referenced us upsetting Roosevelt because we beat them 3 out of 4 times! I don't understand the logic of that comment. We are the defending champion who beat a rival team 3 times in 1 year. This is Just another example of bias against Coolidge, not to mention I was the lone representative coach for the DCIAA.

October 2013- Coolidge homecoming football game cancelled due to a supposed threat. The revenue for that game generally nets $10-15,000. The game scheduled for Friday was played the following Monday with roughly 200 people in attendance.

December 2013- Ms. Evans calls to inform me that she received an anonymous call from a community person stating she should check the eligibility of a Coolidge player. She then informs me a few days later stating that the kid is

ineligible and he can no longer play. This same kid was cleared by the DCIAA and Ms. Evans to participate prior to Dec 1, 2013.

December 2013- 10th grade student transfers in from Landon School. His dad asks what's the process for a waiver to participate in basketball this season. My AD submitted to Ms. Evans the waiver for a transfer. The waiver was not submitted to Clark Ray until 2/2014. Subsequently this student athlete has not been allowed to participate this season. In Total that is 3 Coolidge student athletes affected by the DCIAA's decisions. (Forgot to mention I was told by Ms.Evans to sit out a player because there was a question whether he transferred after the deadline. This information came from Wilson SHS because the player transferred from Wilson the previous year. FYI Wilson SHS has a player that has played all season and registered at Coolidge and transferred to Wilson after Aug 24, 2013. Guess that was overlooked.

January 2014- Ms. Evans sends a letter to my principal Dr. Lawrence stating a player was ruled ineligible and Coolidge would forfeit the 4 games that this player participated in.

February 19, 2014- DCIAA playoff meeting 5pm- I attended the meeting to get information as it was required per the DCIAA email that all coaches were mandated to be present. However all schools were not present. Mr. Alston began speaking about the seedings of the playoffs and ask were there any questions. I asked how could they determine that Coolidge received a #4 seed (Roosevelt 1, Wilson 2, HD Woodson 3) when Coolidge has 4 games (Wilson, McKinley Tech, HD Woodson, DC Met) that were cancelled and everyone else only had 2 cancelled. Ms. Evans asked me what could she do about it and I said nothing but I guess we just have to play the games even though it was unfair. At that point Ms. Evans rolled her eyes at me and said "Win out then" I said I will and said I was done after being disrespected in front of several coaches by her. Due to my anger I got up and left the meeting and immediately informed my Athletic Director Jonathan Blackmon what she said to me. He was in disbelief what transpired, Coolidge receiving the #4 seed, the fact that we did not host the 1st Rd game as the higher seed which is on the DCIAA website and several drafts given at the beginning of the year, the fact that we had to have a police escort out of Anacostia the week before due to threats against our students and parents of our players.

Feb 20, 2014- Coolidge vs Anacostia playoff game @ Anacostia in attendance (John Davis, Stephanie Evans, Clark Ray, Sean Conley)- the game was a tough game played by both schools. During the second quarter Jamall Gregory and #13 from Anacostia received a technical foul by the referee. During the 3rd quarter Ms. Evans approached our bench and whispered in the ear of my assistant coach that Jamall had 1 technical and he can't pick up another one.

Feb 21, 2014- My principal Dr. Lawrence received a letter stating Jamall Gregory will not be allowed to participate in the game 2/22/14 vs Roosevelt. Dr. Lawrence submits an appeal to the DCIAA and S. Evans to overturn the decision made to suspend J. Gregory.

Feb 22, 2014- No response was given orally or in writing to Coolidge regarding a decision for J. Gregory. Coolidge plays Roosevelt @ 6pm -

Final score Roosevelt 96-Coolidge 84

Where is the justice and is there any accountability on those that make decisions on those they govern? I will not be intimidated, threatened, blackballed, conspired against or any other measure that's used.  As a positive black man I will continue to fight for the children I serve in my city!!!

Sincerely,

Coach Jones

202-327-3111 cell

Sent from my iPad