UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VAUGHN JONES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 16-cv-85 (TSC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

In the instant case, Plaintiffs Vaughn Jones and Antonio Pixley assert four causes of action against Defendants: (i) failure to afford due process; (ii) municipal liability; (iii) fraud and deceit; and (iv) intentional infliction of emotional distress. (*See* Am. Compl. ¶¶ 138-82).[1]

This case was removed to this court from the Superior Court for the District of Columbia in January 2016. Prior to removal, Superior Court Judge Geoffrey M. Alprin issued a temporary restraining order (the "TRO"), which Defendants now move to dissolve.[2] The TRO ordered that Plaintiffs be restored to their coaching positions at Coolidge and prohibited them from being

---

[1] In addition to the District of Columbia, Plaintiffs name four District of Columbia Public School ("DCPS") employees as defendants. Because these employees are being sued only in their official capacities (*see* Am. Compl. ¶ 13), the court will refer to the District as the sole defendant in this case. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citation omitted).

[2] Defendants' motion is titled "Motion to Dissolve Plaintiffs' Temporary Restraining Order and Deny Plaintiffs' Motion for a Preliminary Injunction." However, Plaintiffs' motion for preliminary injunction was denied as moot in February 2016 because the Superior Court TRO remained in full force and effect pursuant to 28 U.S.C. § 1450, which provides that "[w]henever any action is removed from a State court to a district court of the United States, . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Accordingly, the only portion of Defendants' motion that remains to be decided is that portion which seeks dissolution of the Superior Court TRO.

removed from those positions until a full and fair investigation is conducted into the allegations against them.  (*See* Mot. Ex. 1).

Upon consideration of the District's motion, Plaintiffs' opposition thereto, and the District's reply in support thereof, and for the reasons set forth below, the motion is hereby **GRANTED**.

**I.     BACKGROUND**

During the time period relevant to this case, Plaintiffs served as basketball coaches at Coolidge High School.  Coaching was not their primary employment or source of income – Jones was employed as a teacher at a public charter school and Pixley was "employed full-time at Coolidge as a Behavioral Technician working with at-risk students."  (Am. Compl. ¶¶ 15, 18).  Coaching positions within DCPS are "extra duty pay" assignments open to non-DCPS employees, with head coaches like Jones making an annual stipend of $4,500 and assistant coaches like Pixley making an annual stipend of $2,000.  (*See* Mot. Ex. 2 ¶¶ 3-5).

Plaintiffs were removed from their coaching assignments in October 2015 after an investigation purportedly determined that they had told a Coolidge guidance counselor during the 2014-15 school year that a Coolidge basketball player was a rising junior "when [they] knew or should have known that" he was actually a rising senior.  (Am. Compl. Ex. A).  This alleged misrepresentation led the guidance counselor to incorrectly adjust the student-athlete's records, thereby improperly extending his eligibility to play basketball for another year.  (*See id.*).

Plaintiffs sued DCPS in Superior Court in December 2015, simultaneously filing a motion for a temporary restraining order.  On December 29, 2015, after an in-chambers hearing, Judge Alprin issued the TRO, which ordered that Plaintiffs be restored to their coaching positions at Coolidge and prohibited them from being removed from those positions until a full and fair investigation is conducted into the allegations against them.  (*See* Mot. Ex. 1).

2

Plaintiffs subsequently filed an amended complaint in Superior Court, substituting the District of Columbia for DCPS and adding four individual DCPS employees as defendants sued only in their official capacities. The District removed the case to this court on January 15, 2015 based on the federal question raised by Plaintiffs' due process claim. (*See* Notice of Removal). Plaintiffs have since amended their complaint again. (*See generally* Am. Compl.).

The District now moves for the dissolution of the Superior Court TRO.

## II.     LEGAL STANDARD

When a case is removed to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Importantly, however, "federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 437 (1974).

Under federal law, injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quotation and citations omitted), and "that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citation omitted). A party's entitlement to injunctive relief depends upon his or her ability to demonstrate (i) a substantial likelihood of success on the merits; (ii) that he or she would suffer irreparable injury absent the requested injunctive relief; (iii) that the balance of equities tips in his or her favor; and (iv) that the public interest would be furthered by the requested injunctive relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"The basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting

*Sampson v. Murray*, 415 U.S. 61, 88 (1974)); *see also Trudeau v. FTC*, 384 F. Supp. 2d 281, 296-97 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006) ("A showing of irreparable harm is the sine qua non of the preliminary injunction inquiry.") (citing *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003)). Accordingly, the "failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015) ("the movant must always show irreparable harm or injury, and if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors") (citing *CityFed*, 58 F.3d at 747).

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy*, 454 F.3d at 297. "[T]he injury 'must be both certain and great; it must be actual and not theoretical.'" *Id.* (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). The injury must also be "of such ***imminence*** that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Wisc. Gas Co.*, 758 F.2d at 674 (quotation omitted) (emphasis in original). Moreover, the injury must be "beyond remediation," *Chaplaincy*, 454 F.3d at 297, as it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisc. Gas Co.*, 758 F.2d at 674. Indeed, the D.C. Circuit has made clear that

> [t]he key word in this consideration is ***irreparable***. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Chaplaincy*, 454 F.3d at 297-98 (quoting *Wisc. Gas Co.*, 758 F.2d at 674) (emphasis in original).

### III. ANALYSIS

The District argues that Plaintiffs have failed to demonstrate irreparable harm because they allege only loss of employment and reputational injuries, which are "clearly redressable through corrective means after trial and thus [are] not irreparable as a matter of law." (*See* Mot. at 7-9).

Plaintiffs acknowledge "that economic loss alone does not give rise to irreparable harm." (Opp'n at 10) (citing *Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2014)). They point out, however, that there may be situations "where 'the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found,'" though these "'extraordinary cases are hard to define in advance of their occurrence.'" *Davis*, 76 F. Supp. 3d at 65 (quoting *Sampson*, 415 U.S. at 92 n.68). They also point out that economic loss can "rise to the level of irreparable harm when it threatens the movant's business" (Opp'n at 10) (citing *Wisc. Gas Co.*, 758 F.2d at 674), and that "'[r]eputational injury can be used to establish irreparable harm in certain circumstances.'" (Opp'n 10) (quoting *Trudeau*, 384 F. Supp. 2d at 297).

More specifically, Plaintiffs argue that the "decision to dismiss [them] goes far beyond them losing a job," as they are "banned . . . from pursuing coaching opportunities at other DCPS high schools," as well. (Opp'n at 10). Plaintiffs further assert that, after his initial removal from his coaching position, Jones was questioned by his employer about the allegations against him, various colleges and universities stopped communicating with him regarding scholarship opportunities for certain Coolidge players, several Coolidge players and assistant coaches protested his removal, and he "began having migraine headaches, pains in his left arm, chest pains and sleeplessness," leading his wife and son to move out of the family home "because of the impact [his removal] was having on him." (*Id.* at 10-11). Plaintiffs also claim that Pixley's

5

future coaching prospects were harmed, that he suffered "significant distress," and that he "resigned from his position as a behavior tech at Coolidge and now works part time at a hotel." (*Id.* at 11-12).[3]

The District responds by arguing that Plaintiffs' opposition brief fails to show that any harm to them will be irreparable. (*See* Reply at 2).[4] It also notes that the three main cases cited by Plaintiffs in support of their irreparable injury argument – *Davis*, *Wisconsin Gas Company* and *Trudeau* – are all inapposite. (*See id.*). The court agrees with the District, as none of these three cases actually found that the movant had established irreparable harm based on an employee's discharge, economic loss or reputational injury.[5] Instead, these cases merely acknowledge the theoretical possibility of establishing irreparable harm on such bases. And in

---

[3] Plaintiffs also argue that their players and their players' families would be irreparably harmed absent injunctive relief, given that Plaintiffs' initial removal from their coaching positions caused the team to begin losing games and led to members of the team losing scholarship opportunities. (*See* Opp'n at 12-13). But the irreparable harm prong of the injunctive relief calculus only concerns harm suffered by ***the party or parties seeking injunctive relief***. *See, e.g.*, *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that **he is** likely to suffer irreparable harm in the absence of preliminary relief.") (emphasis added). Accordingly, any alleged harm to third parties is properly addressed under the public interest prong of the injunctive relief calculus, as Plaintiffs themselves acknowledge. (*See* Opp'n at 12) ("In reviewing whether to grant a preliminary injunction, [c]ourts consider harm to third parties as a matter of public interest.").

[4] The District also correctly points out (as noted by the court at footnote 3, *supra*) that "Plaintiffs primarily focus on the alleged harm to the students they coach" even though "the students Plaintiffs coach are not parties to this lawsuit," and that the only harm the court should review "is the harm that will come to ***Plaintiffs*** in the absence of pretrial relief." (Reply at 2) (emphasis in original).

[5] *See, e.g.*, *Davis*, 76 F. Supp. 3d at 69 ("[T]he Court concludes that the plaintiff's motion for a preliminary injunction must be denied. This result is required because the plaintiff has failed to demonstrate that any of the four factors the Court must consider weigh in his favor."); *Wisconsin Gas Co.*, 758 F.2d at 676 ("Petitioners have not demonstrated that they will suffer irreparable injury in the absence of a stay. Indeed, the showings made fall so far short that these petitions should not have been filed. The motions for stays are denied."); *Trudeau*, 384 F. Supp. 2d at 296 ("Even if the Court had reached a different result on the motion to dismiss, however, the Court would nonetheless deny the motion for a preliminary injunction [based on] Trudeau's failure to establish that he would suffer irreparable harm in the absence of an injunction pending trial.").

the court's view, Plaintiffs' position on irreparable harm in the instant litigation suffers from the same kinds of infirmities present in *Davis*, *Wisconsin Gas Company* and *Trudeau*.

To wit, Plaintiffs' primary alleged injury is simply the loss of their part-time supplemental employment via their "extra duty pay" assignments as basketball coaches.  As the District correctly points out, "cases are legion holding that loss of employment does not constitute irreparable injury."  *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006) (citing, *inter alia*, *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Mediation Bd.*, 374 F. Supp. 2d 135, 142 (D.D.C. 2005) ("a loss of income does not constitute irreparable injury because the financial loss can be remedied with money damages")).  Plaintiffs acknowledge this, and attempt to demonstrate irreparable injury by positing the instant litigation as the kind of "extraordinary case[]" contemplated by the case law they cite.  *Davis*, 76 F. Supp. 3d at 65 (quoting *Sampson*, 415 U.S. at 92 n.68).  But Plaintiffs fall well short of actually demonstrating how the harm they will suffer absent injunctive relief is in any way extraordinary.  Indeed, the court agrees with the District that, at least insofar as the irreparable injury calculus is concerned, this case is simply "a garden-variety employment dispute over part-time at will positions."  (Mot. at 1).

In terms of their alleged reputational injuries, Plaintiffs are correct that harm to reputation can, in certain circumstances, constitute irreparable injury.  *See Brodie v. U.S. Dep't of Health and Human Services*, 715 F. Supp. 2d 74, 84 (D.D.C. 2010); *Trudeau*, 384 F. Supp. 2d at 297.  Indeed, because "[i]njury to reputation and goodwill is not easily measured in monetary terms," it is "often viewed as irreparable."  11A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2948.1 (3d ed. 2013 & 2015 Supp.).  "[A]s with all other forms of irreparable harm," however, "the showing of reputational harm must be concrete and corroborated, not merely speculative."  *Trudeau*, 384 F. Supp. 2d at 297 (citations omitted); *see also Wisc. Gas Co.*, 758 F.2d at 674 (noting that a movant's injury "must be both certain and great; it must be

7

actual and not theoretical"). Conjecture and "vague and unsupported" assertions of harm are not sufficient. *Brodie*, 715 F. Supp. 2d at 84.

While Plaintiffs have shown that their removal from their coaching positions has been reported in the media, they have not demonstrated that they will suffer any great, concrete, corroborated and certain reputational injuries absent the injunctive relief granted in the TRO. For example, the court does not view the fact that certain colleges and universities stopped communicating with Jones about Coolidge basketball players after his removal as Coolidge's coach as evincing any reputational injury. Instead, the court views this cessation of communications as a simple reflection of the fact that Jones was no longer Coolidge's coach, such that colleges and universities would have no reason to communicate with him about scholarship opportunities for Coolidge players. Additionally, the mere fact that Jones was questioned by his employer about the allegations against him does not rise to the level of reputational injury that would warrant the extraordinary remedy of injunctive relief, nor do any of the other facts cited in Plaintiffs' opposition brief, particularly where the allegations against them are already public knowledge.

In sum, because Plaintiffs have not demonstrated that they will suffer great, concrete, corroborated and certain irreparable harm absent the injunctive relief now in place under the TRO, the court will grant the District's motion and dissolve the TRO without considering the remaining injunctive relief factors. *See Chaplaincy*, 454 F.3d at 297 (the "failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief"); *Save Jobs USA*, 105 F. Supp. 3d at 1112 ("the movant must always show irreparable harm or injury, and if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors") (citing *CityFed*, 58 F.3d at 747).

8

## IV.  CONCLUSION

Upon consideration of the District's motion, Plaintiffs' opposition thereto, and the District's reply in support thereof, and for the reasons set forth above, the motion is hereby **GRANTED**, and the temporary restraining order issued by Superior Court Judge Alprin on December 29, 2015 is hereby dissolved.

An appropriate Order accompanies this Memorandum Opinion.


Date:  April 14, 2016


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge