**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VAUGHN JONES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Case No. 16-cv-0085 (TSC) |
| | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiffs are Vaughn Jones and Antonio Pixley, two former basketball coaches at Calvin Coolidge Senior High School in Washington, D.C., Justin Route, a former student and basketball player at Coolidge, and Jennifer Route, Justin's mother.  Plaintiffs challenge D.C. Public Schools' ("DCPS") investigation into Justin Route's eligibility to play basketball, as well its subsequent determination that he was ineligible and that Jones and Pixley should be terminated due to their involvement in falsifying Justin's student records.  Plaintiffs allege that the District violated the Due Process Clause and engaged in fraud, breach of fiduciary duty, and intentional infliction of emotional distress.[1]  The District moved to dismiss under Rule 12(b)(6).  (ECF No. 34).  Upon consideration of the motion and Plaintiffs' Opposition, and for the reasons stated herein, the District's motion is GRANTED.

## I.   BACKGROUND

While the factual and procedural history of this case was described in this court's April

---

[1]  As this court explained in its earlier opinion, because Plaintiffs sued several DCPS employees only in their official capacity, the court will refer to the District as the sole defendant in this case. *See* 177 F. Supp. 3d 542, 543 n.1 (D.D.C. 2016).

14, 2016 Opinion, *see* 177 F. Supp. 3d at 544, the court will briefly discuss the relevant facts here.  In the summer of 2015, DCPS began to investigate whether Justin Route was eligible to play basketball during the 2015–2016 school year.  (Third Am. Compl. ("Compl.") ¶ 88 (ECF No. 33)).  Because students may only play basketball for four years during high school, school officials believed Justin was ineligible to play an additional year due to his having played as a ninth grader at his previous school.  (*Id.* ¶¶ 85, 88).  In August 2015, Jennifer Route provided DCPS with transcripts she had received in 2013 from Justin's previous school, showing that he attended for three years and that he had completed the eighth grade.  (*Id.* ¶ 92; Compl. Ex. M).  That same month, DCPS officials obtained their own copies of Justin's past transcripts, which they provided to Jennifer Route and which showed that he had actually completed ninth grade at his previous school.  (Compl. ¶¶ 103–08; Compl. Ex. P).  The following month, a DCPS investigator interviewed Justin, who reported that he had repeated eighth grade at his previous school and entered Coolidge as a freshman.  (Compl. ¶¶ 95–96; Compl. Ex. F).  Following this investigation, DCPS concluded that Justin was ineligible, that his school records had been altered, and that Jones and Pixley should be terminated from their coaching positions due to their involvement in altering Justin's records.  (Compl. Ex. B).

Plaintiffs allege that the transcript DCPS obtained and used to support its determination that Justin was ineligible and that Jones and Pixley should be terminated was inaccurate or falsified.  (Compl. ¶¶ 106–08).  They claim that Jones was targeted by the District due to Plaintiffs' vocal complaints of mismanagement, and that the terminations at issue here were just one part of ongoing retaliation for Jones' public criticism.  (*Id.* ¶¶ 150–51, 157–63).  Plaintiffs first filed this suit in D.C. Superior Court, and in December 2015 that court issued a temporary restraining order, ordering that Jones and Pixley be restored to their coaching positions and

prohibiting the District from removing them from those positions pending the outcome of the litigation.  177 F. Supp. 3d at 544.  The case was subsequently removed to U.S. District Court, and the District moved to dissolve the Superior Court's TRO.  In April 2016, this court granted the District's motion based on Plaintiffs' failure to demonstrate irreparable harm sufficient to support a continued TRO or preliminary injunction.  *Id.* at 546–48.  In July 2016, Plaintiffs filed a Third Amended Complaint, adding Justin and Jennifer Route as plaintiffs, and the District has now moved to dismiss under Federal Rule 12(b)(6).  (ECF Nos. 33, 34).

## II.    LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks omitted).  Evaluating a 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

### A.    Due Process Claim (Count I)

Plaintiffs Jones and Pixley first allege that they were not afforded due process by the District in its investigation and ultimate decision to terminate their coaching positions.  In order

to state a due process claim, Plaintiffs must first establish that they had a property interest in continued employment.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citing *Board of Regents v. Roth*, 408 U.S. 564, 576–578 (1972)).  The Constitution does not itself create property interests; instead, they are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Id.* (quoting *Roth*, 408 U.S. at 577); *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) ("[P]roperty interests 'attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.'" (quoting *Paul v. Davis*, 424 U.S. 693, 710 (1976))).  Consideration of whether Plaintiffs have a property interest in their continued coaching positions thus requires a review of local law.[2]  *See O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C. Cir. 1998) (no property interest in continued employment under D.C. Code § 4-104); *Grant v. District of Columbia*, 908 A.2d 1173, 1179 (D.C. 2006) (citing *O'Donnell* and reviewing various other sections of the D.C. Code).

Jones and Pixley were not full-time or career DCPS employees.  Instead, they were hired yearly as coaches under the D.C. Interscholastic Athletic Association ("DCIAA") Coach Agreements (Am. Compl. ¶ 26; Compl. Ex. A).  They allege that they had a property interest in these positions because the DCIAA Handbook provided assurances of some available due process rights in connection with disciplinary actions.  (Compl. ¶¶ 164–74).  Under the D.C.

---

[2]  The District erroneously relies on several cases that focus exclusively on whether Plaintiffs had an employment contract, including discussion of whether the terms in their Coach Agreements were sufficiently definite to create a binding contract.  (*See* District Resp. at 7–8 (citing *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001); *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990); *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995); *U.S. ex rel. Hood v. Satory Glob., Inc.*, 946 F. Supp. 2d 69, 90 (D.D.C. 2013)).  These cases do not assess whether plaintiffs had property interests in continued employment; indeed, they do not even involve public employees.

Municipal Regulations governing interscholastic athletics, "a coach . . . who knows, or should have known, that an ineligible student is participating or has participated in an interscholastic athletic program or contest, shall be subject to disciplinary action pursuant to [DCPS] regulation or policy." 5A D.C.M.R. § 2702.7. Plaintiffs assert that the policy in the DCIAA Handbook controls disciplinary action here. The Handbook states that "disciplinary actions shall be taken pursuant to applicable personnel regulations" and, further, "[p]rogressive discipline shall be utilized in accordance with applicable personnel regulations." (Handbook § 8.4.1(4) (Compl. Ex. I)). The Handbook additionally provides that "[a]ll employees shall have the right to grieve or otherwise challenge any adverse action pursuant to DCPS regulations." (*Id.* § 8.4.2). Finally, the Handbook contains a section called "Appeals Procedure" that describes the process for bringing grievances. (*See id.* § 8.5.2). Additionally, though not cited by Plaintiffs, the DCPS Report of Investigation into Jones cited D.C. Municipal Regulation § 5-E1401.2 as the basis for its findings against him. (Pl. Ex. 4). This section of the city's regulations further provides for the right to an appeal, and some limited process. 5-E14 D.C.M.R. §§ 1402, 1406.

The District does not dispute that Plaintiffs may have had some right to appeal their termination. In the court's view, Plaintiffs Jones and Pixley have therefore satisfied their burden at this stage to plausibly allege that they had a property interest in their employment, entitling them to some limited due process protection. Though it remains unclear what process Jones and Pixley may have been entitled to, they allege that they had no hearing and no opportunity to refute specific allegations made against them. (Compl. ¶¶ 176–77). Plaintiffs have thus plausibly stated a claim that they had a property interest in their position, were entitled to some due process protections, and failed to receive what process was due.

The District additionally argues, however, that even if Plaintiffs can state a due process

claim, their claim should be still dismissed on the ground that the District of Columbia may not

be held liable as a municipality under 42 U.S.C. § 1983.[3]  The court agrees.  A municipality may

be not be sued under § 1983 for the acts of its employees on a theory of *respondeat superior* or

vicarious liability.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691–92 (1978).  Instead,

a municipality may only be sued as a "person" under § 1983 when the alleged constitutional

injury was the result of an "action [taken] pursuant to official municipal policy."  *Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).  "Official municipal policy

includes the decisions of a government's lawmakers, the acts of its policymaking officials, and

practices so persistent and widespread as to practically have the force of law."  *Id.* at 61.

Plaintiffs must also allege that some official policy caused the deprivation of due process.

*Monell*, 436 U.S. at 692.  In other words, Plaintiffs must allege that the District's policy was the

"moving force" behind the constitutional violation.  *City of Canton, Ohio v. Harris*, 489 U.S.

378, 389 (1989).  Plaintiffs may establish causation "if, for instance, the municipality or one of

its policymakers explicitly adopted the policy that was the moving force of the constitutional

violation."  *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (internal quotations

omitted).  To be considered a policy maker, an individual must "speak with final policymaking

authority," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), and "typically must be at

least an agency head or the governing body of an agency," *Coleman v. District of Columbia*, 828

F. Supp. 2d 87, 91 (D.D.C. 2011) (finding that an Assistant Chief in the D.C. Fire and

Emergency Medical Services Department was not a final policy maker).  Central to the court's

analysis is not whether an employee was simply in a leadership position, but whether "the D.C.

---

[3]  Plaintiffs allege municipal liability as Count II in their Complaint.  This is not a separate cause
of action and will be considered only as to liability under Plaintiffs' due process claim.

Code specifically grants authority to [the alleged policy maker] to promulgate administrative rules or . . . policies and procedures" and whether their "discretionary decisions are constrained by policies not of that official's making." *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011).

In their Third Amended Complaint, Plaintiffs allege that the District is liable under § 1983 because the due process deprivation was caused by the individual defendants named in their official capacities—John Davis, Mary Outlaw, Stephanie Evans, and Reginald Ballard— who Plaintiffs claim are "decision makers." (Compl. ¶¶ 15, 199). However, Plaintiffs pleaded no facts beyond conclusory statements to show that these individuals had any role in Plaintiffs' termination or denial of their right to be heard. (*See* Compl. ¶ 15 ("Evans, Ballard, Outlaw and Davis are decision makers within DCPS and are primarily responsible for Plaintiffs' termination."), ¶ 199 ("These official actions and omissions involved decision makers who are directors and senior officials within District Government, including Reginald Ballard, Stephanie Evans, Mary Outlaw, and John Davis.")). Instead, Plaintiffs only allege with any specificity that Outlaw, the Deputy Chief of Secondary Academic Support, was the person who issued the termination letters and notified Jones and Pixley that they lacked the right to a formal appeal. (Compl. ¶¶ 9, 198; Compl. Ex. B (termination letters from Mary Outlaw); Compl. Ex. H (e-mail from Mary Outlaw re appeals)). Plaintiffs provide the court with no facts or basis for concluding that Outlaw has "final policymaking authority" to permit her acts to be attributed to the District under § 1983, and further fail to allege in their Complaint any additional facts to establish a basis for municipal liability under § 1983 and *Monell*.

The court therefore concludes that because Plaintiffs have only brought suit against the District and District employees in their official capacity, and have not pleaded sufficient facts to

allege a cause of action under § 1983, their due process claim must be dismissed.  The District's motion is therefore GRANTED on Count I.

      B.    <u>Fraud and Deceit (Count III)</u>

Plaintiffs next allege that the District engaged in several instances of fraud.  To state a claim for fraud in the District of Columbia, Plaintiffs must allege "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation."  *United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 591 (D.C. Cir. 2016) (quoting *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1036 (D.C. Cir. 1980)); *see also Friends Christian High Sch. v. Geneva Fin. Consultants*, 39 F. Supp. 3d 58, 64 (D.D.C. 2014) (quoting *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002)).  Federal Rule 9(b) also requires a heightened pleading standard for fraud claims, requiring plaintiffs to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud."  *Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 128–29 (D.D.C. 2014) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)).

Plaintiffs allege that District employees (1) falsely told the Routes that Justin was ineligible to play basketball during his senior year (Compl. ¶¶ 13, 202; Compl. Ex. C); (2) made false representations to the Routes and to school administrators that Jones and Pixley were involved in altering Justin's school records and that Jones was a danger to students (Compl. ¶¶ 205–06); and (3) informed Jones and Pixley they did not have the right to appeal their termination (Compl. ¶ 208; Compl. Ex. H).

With respect to the first allegation, Justin and Jennifer Route allege that the District's

eligibility determination was "erroneous" and "unsubstantiated," and it was the result of a "bogus investigation" because the District "knew or should have known" that the transcript evidence was falsified.  (*Id.* ¶¶ 13, 35, 109, 132).  While Jennifer Route stated in her affidavit that "DCPS has made a mistake regarding my son's eligibility," Plaintiffs allege in their Complaint that Reginald Ballard, the Interim Director of DCIAA, "lied to Ms. Route about Justin's eligibility" and District employees "intentionally led a skewed investigation to justify terminating Coach Jones and Coach Pixley."  (Compl. Ex. D; Compl. ¶¶ 12, 131–32).  Finally, they allege that they relied on the District's "representations about her son's eligibility, [and] incurred significant expense in moving her son to Florida to save his scholarship opportunities and college career."  (*Id.* ¶ 220).

The court finds that Plaintiffs have failed to plead facts sufficient to state a fraud claim under Rule 9(b)'s heightened requirement.  Plaintiffs allege that due to certain apparent grade calculation errors on the official transcript obtained during the investigation, the District should have known that the entire transcript was falsified.  However, Plaintiffs have not alleged beyond these conclusory statements that the District had knowledge of falsity or the intent to deceive, whether as to the genuineness of the transcript or to Justin's eligibility, nor have they stated with particularity the time and place of the alleged misrepresentations as required under Rule 9(b).  Moreover, it is not clear to the court, and Plaintiffs have provided no support for their assertion, that Justin's eligibility is itself a "fact" that may support a common law fraud claim at all, given that whether a student is eligible is a legal determination made by DCPS employees pursuant to D.C. Municipal Regulations § 5A-2701.  While Plaintiffs allege that they have experienced financial and emotional hardship after the District's determination that Justin Route was ineligible to play an additional year of basketball, and they strongly disagree with that eligibility

determination, they have not sufficiently stated a fraud claim.

Plaintiffs' second allegation also fails to state a claim for fraud.  Plaintiffs state that the District's statements regarding the actions of Jones and Pixley were "baseless and slanderous" (*id.* ¶ 206), but they fail to allege facts to support any of the elements of a fraud claim, including that the statements were made with knowledge of falsity or with intent to deceive, or that Plaintiffs relied on these statements in some way.  Plaintiffs further fail to state specific facts necessary to satisfy the heightened pleading standard under Rule 9(b).  As a result, they fail to state a claim for this alleged misrepresentation.

Lastly, Jones and Pixley also fail to state a fraud claim for the District's alleged misrepresentation that they lacked the right to appeal their terminations because Plaintiffs did not allege that District employee Mary Outlaw had knowledge of falsity or had the intent to deceive, as required to state a claim.  Furthermore, Plaintiffs have not alleged a misrepresentation "in reference to a material fact."  Instead, as Defendants argue, the alleged misrepresentation was a misstatement of law, which is not actionable as a fraud claim.  *See Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 555 (D.C. 2016) ("Appellant's claim fails, however, because the alleged misrepresentation is in essence an alleged misrepresentation of *law*, not a misrepresentation of fact.  Thus, even when we accept appellant's allegations as true, she fails to allege the second element of fraud, which is material fact.") (emphasis in original).[4]  Therefore, Plaintiffs have failed to allege a claim for fraud with respect to their appeal rights.

---

[4]  Plaintiffs argue in their Opposition that the court should apply an exception to this rule where a misstatement of law may support a fraud claim "where one has, or professes to have, a superior knowledge of the law."  *Democratic Nat'l Comm. v. McCord*, 416 F. Supp. 505, 507 (D.D.C. 1976) (quoting *Dixon v. Dodd*, 80 A.2d 282, 284 (D.C. 1951)).  However, they failed to allege any facts to support a conclusion that District employees had superior knowledge of the procedures in the DCPS Athletics Handbook.

Defendants' motion is therefore GRANTED on Count III, Plaintiffs' fraud claims.

C.    Breach of Fiduciary Duty (Count V)[5]

To state a claim for breach of fiduciary duty, Plaintiffs "must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of fiduciary duties." *Geneva Fin. Consultants*, 39 F. Supp. 3d at 63 (quoting *Armenian Genocide & Mem'l, Inc. v. Cafesjian Family Found., Inc.*, 607 F. Supp. 2d 185, 190–91 (D.D.C. 2009)).  Plaintiffs have failed to do so here.  Plaintiffs claim that the District owed them a fiduciary duty because DCPS "is a fiduciary to all students in its care and thus had a duty of loyalty and care to all children to whom it is charged to uphold its promise."  (Compl. ¶ 225).  In support, Plaintiffs cite to the DCPS Statement of Purpose, which states that DCPS's purpose is "[t]o ensure that every DCPS school provides a world-class education that prepares ALL of our students, regardless of background or circumstance, for success in college, career and life."  (Compl. ¶ 224 (quoting *About DCPS*, http://dcps.dc.gov/page/about-dcps) (capitalization in original)).  Besides this generic statement of purpose, Plaintiffs cite to no other source of a fiduciary duty and point to no court decision that has determined that the D.C. Public Schools, or any other school system, owes its students and their parents a fiduciary duty.  Further, Plaintiffs have pleaded no additional facts beyond the conclusory statement quoted above to support a finding that there existed a fiduciary duty between DCPS and Justin or Jennifer Route.  Without more, the court finds that Plaintiffs have failed to allege facts to plausibly state a claim.  Therefore, the court GRANTS Defendants' motion to dismiss Count V.

---

[5]  This count was labeled Count V in the complaint.  There appears to be no Count IV.

D.      Intentional Infliction of Emotional Distress (Counts VI, VII)

In order to state a claim for intentional infliction of emotional distress, Plaintiffs must allege "(1) extreme and outrageous conduct on the part of the defendant[s] which (2) intentionally or recklessly (3) causes [them] severe emotional distress." *Smith v. United States*, 843 F.3d 509, 515 (D.C. Cir. 2016) (quoting *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008)).   In Count VI, Jennifer and Justin Route allege intentional infliction of emotional distress relating to the investigation of Justin's eligibility to play basketball.   In Count VII, Jones and Pixley allege intentional infliction of emotional distress relating to their termination after Defendants' investigation into their involvement in falsifying Justin's school records.

Jennifer and Justin Route specifically allege that Defendants behaved outrageously when they used transcripts Plaintiffs believe to have been falsified in determining Justin's eligibility to play basketball.  (Compl. ¶¶ 231–33).  Plaintiffs claim that Defendants did this intentionally. (*Id.*).  Further, they allege that the subsequent loss of college scholarship opportunities for Justin Route caused them "extraordinary distress."   Plaintiffs allege that Jennifer Route called Jones in tears on nearly a daily basis because she was so distraught about the situation, and Justin Route became "depressed and saddened." (*Id.* ¶¶ 43–44).  But the facts as alleged by Plaintiffs show that the District conducted its administrative investigation over the course of several months, considered conflicting transcripts and the statements of Justin himself, before determining that he was ineligible for an additional year of basketball.  Even if taken to be true, Plaintiffs' allegations fall far below the level of "extreme and outrageous" required to state a tort claim.  Therefore, the court GRANTS the District's motion on Count VI.

With regard to Jones and Pixley's claim of intentional infliction of emotional distress,

they allege that (1) District employees used falsified school records to support the District's

conclusion that Justin was ineligible, and (2) these employees ignored evidence and intentionally

relied on these falsified transcripts to conclude that Jones and Pixley had been involved in the

plan to classify Justin as a junior so he could play basketball for an additional year.  (*See* Compl.

¶¶ 242–50).  They allege this was done to "satisfy adult vendettas and appease competing

coaches who are friends with some of Defendant's top athletics directors."  (*Id.* ¶ 245).

Additionally, Jones alleges that as a result of the District's actions his "personal life has been

destroyed," including separation from his wife and son, extreme anxiety and depression, and

physical pain in his left arm and chest.  (*Id.* ¶ 260).  Similarly, Pixley alleges that he is now

"extremely depressed and experiences tiredness and mood swings" as a result of the District's

conduct.  (*Id.* ¶ 264).

For the same reasons as above, the court finds that, even if true, the District's

administrative investigation and determinations do not rise to the level of extreme and

outrageous conduct sufficient to support a tort claim.  Defendants' motion is GRANTED on

Count VII.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.


Date:  March 15, 2017


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

13